cases submitted we'll move to case number three which is Sarma v. Commissioner 21-12303. We have Mr. Hodges here for the Sarmas, Mr. Christensen here for the Commissioner. Mr. Hodges, whenever you're ready. May it please the Court. My name is Charles Hodges and I represent the appellants, Mr. and Mrs. Sarma and their small partnership, Lincoln Partners, in this case. I've reserved four minutes for rebuttal. Very well. This is a statutory interpretation case and we ask for one simple thing and that is like the Supreme Court said in Moasco and that is that there should be strict application and strict apprehension to procedural rules, whatever those rules are. Here this focuses on a very important tax procedure rule that involves not just the small partnership of Lincoln Partners but for all small partnerships and small LLCs throughout this circuit. The question is this. Does the Internal Revenue Code, does it grant small partnerships, those who have ten or less taxpayer partners, the same due process rights that it clearly grants and the parties agree it grants to those larger or more complex partnerships that you will see referred to as tougher partnerships? But here, especially with regards to the challenge or the dispute between the IRS and the partnership of a loss incurred by that partnership. The Sarmas and Lincoln Partners, we of course say yes, the Internal Revenue Code in Congress intended for the same due process rights to be given to all partnerships. The tax court with no statutory analysis, no statutory reliance, I mean instead relying only upon one case of which did not even have a small partnership as a partner said no, you don't get those due process rights. What has been helpful in this case is the IRS at the appellate level has said either one of you are right but we, the IRS, get to decide on a case-by-case basis which is your procedural path. This court has not addressed this issue and both the IRS and the partners in this circuit need the guidance as it will impact audits and litigations of small partnerships. These types of procedural rules simply help tremendously for audits and litigation because taxpayers need to know their procedural path and the way that audits will be conducted. But put simply in this case, the tax court erred in concluding it had jurisdiction. The tax court lacked jurisdiction because the IRS failed to issue a timely and therefore valid notice of deficiency to the small partnership, Lincoln Partners, and the Sarmis for their tax year ending December 31, 2001. We raised three issues in our brief. The first two are tied together and get the same relief which is granting the motion for summary judgment to the taxpayer but both of them rise and fall on the same issue and that is this. For issues one and two, we stated that the tax court erred as a matter of law in determining that a small partnership's basis, let's just say the amount it paid, the small partnership's basis in another partnership that it owned is called an affected item under the Internal Revenue Code under 6231A5. So just to put a tack in this for a minute, having framed the issue that way, can you explain to me why this Treasury regulation that I'm reading, I'm going to overwhelm you with numbers here but you'll know what I'm talking about, 301.6231A5-1B says the following. The basis of a partner's partnership interest is an affected item to the extent it is not a partnership item. Exactly, Your Honor. Thank you. So I think you think it's not a partnership item, right? Well, it's . . . And it may be . . . I think your argument is if it's not a partnership item, it must be a non-partnership item. But this seems to say it can be an affected item, it is an affected item, if the thing we're talking about is the basis, which I think it is, of a partner's, which I think we're talking about, partnership interest. That's a great question, Your Honor. What you were reading are the rules with regards to TEFRA partnerships and we're a small partnership so that's why so much time and energy is spent by the parties using TEFRA partnership analogies. So I think you're exactly right about that, that this is like a TEFRA rule, but nonetheless it still says, I mean, you don't deny, do you, that your client was a partner in a partnership? You might not be a TEFRA partnership, but you were a partner in a TEFRA partnership. And this says that a partner's partnership interest is an affected item, which sort of, in my sort of idiot way of thinking about it, throws TEFRA around the whole relationship. Yes, no, we were a partner, the Sarmers were a partner in a small partnership, which are excluded. Which itself was a partner in the TEFRA partnership, correct? Yes, but we're talking about the 12-31-01 tax year, where it's by itself, because each tax year stands on its own. So that's been the biggest procedural struggle with this case, is because the loss that the IRS wanted to challenge is in the December 31st, 2001 tax year, when Lincoln Partners, who incurred the loss, was a small partnership. We've never had our day in court. All of the prior proceedings dealt with the TEFRA partnerships in their proceedings. But as to what happened in our tax year, the way that the IRS did the procedure here was, we're going to litigate against all of these folks, and then try to say, all of this is affecting you, small partnership. But here is to, let me, if I could, Judge Newsom, here's how you know, at least, that it's never intended for TEFRA partnerships to ever have anything called an affected item. And then you'll see by analogy that small partnerships should not either. Under 6226 of the code, when an audit is done with a TEFRA partnership, the 6226, Congress says you, IRS, must issue an FPA, a Notice of Final Partnership Administrative Adjustment, to that partnership. And all you can adjust on that tax return are what we, Congress, call partnership items. It does not say partnership items and affected items. And then it says, as you, TEFRA partnership, all you can do are go to court and challenge partnership items. One of the greatest things that I love that Justice Scalia has ever said, and I finally found a place to put it, is here, is it's not as just what Congress said, it's what did Congress not say. By not giving the IRS the ability to even raise affected items for TEFRA partnerships, that means they never meant for them to exist. For a partnership, affected items only belong to us individual partners, the ones who have to pay the bills. When the partnership proceeding is over, we then, as individual partners, or C-corporations, or taxpayers, and so we have to pay the bills. So anytime you see in the code or in the regs with regards to an affected item, you'll never see it with reference to a flow-through entity. So what we're saying is, if Congress clearly said, under 6226, that TEFRA partnerships don't have affected items of any kind, including partnership basis. Partnership basis, why does a partnership care about its basis? We care about basis. We buy a share of Coke stock, pay $10 for it, tomorrow we sell it for $20. We care because now we have gain of $10. Partnerships aren't taxpayers. They only need their basis when there is some event realized, such as there's going to be a sell that's going to generate a loss. And so what the code and the regs clearly say is, if a partnership has a loss, that must be resolved in its own tax year. That's all we asked for here. That's why we're back for a second time. We have only come back because this is the procedural way that the IRS has handled this case. They made us litigate and we just got to be there, even though 1231.01 was not at issue in the earlier proceedings. The judge specifically said, 1231.01, Lincoln's small tax year, is not before me. So all those proceedings happened and then the IRS issues what is called an affected item notice of deficiency and says, hey, Lincoln partners, you are now, your entire tax liability for 1231.01, of which you never got to litigate, is determined based upon this. And so, the procedural nightmare occurred because the tax court never took the time to say, well, wait a second, is partnership basis under the code for a flow-through entity ever an affected item? And they didn't do that. They didn't look at the statute. And instead, all they did is they relied upon a Supreme Court case who, of course, in Woods, who just as a side, cited to what you said, which is generally partnership or partner basis is an affected item. And they referenced the exact section that you did, but that is regards to an individual partner because only individual partners can have affected items. There is no place in the code, no place in the regs where a small partnership or a flow-through partnership that's a TEFRA partnership, whatever kind of partnership you want, under no circumstance can they have affected items. We asked, and as you will see, there were three notices of deficiency issued in this case. I guess, a pause on that, I don't understand how the text leads to that, your conclusion. It says an affected item is any item to the extent that such item is affected by a partnership item. Correct. So, tell me why that doesn't squarely apply here. Okay, well, one, that is in relation to TEFRA partnerships and what that is saying is that, and this is where the Steinbrenner case out of the Middle District of Florida is helpful, is that that is telling you no item can be a partnership item and an affected item. You can't, if you're a partnership item, you cannot be an affected item. In our case . . . And why is that? I mean, you're just . . . Because . . . The text doesn't say that and it would seem that they argue that as long as you're talking about different tiers, that you can be both, that it's not exclusive, whether you're an effective item or a partnership item. Every case to interpret the language that you just said, your Honor, says that by its definition, Congress is saying is an affected item is an item to the extent that it is affected by a partnership item. So, therefore, it cannot be that affected item can't, by statute, be a partnership item too, if that makes sense. But, again, that's with TEFRA. So, in the end, what I just want to point out is that because the TEFRA, Congress said for TEFRA partnerships, there's no such thing as affected items because we do not allow you to, IRS, to challenge affected items and we don't allow the partnerships to challenge affected items, then that means that TEFRA partnerships get to litigate their own case. So if we would have been a TEFRA partnership, if we had structured ourselves more complex, we would have been part of that district court case in Florida. We would have been there. Mr. Sarma's partnership that he got involved in on 12-14 would have been an active participant. Well, he was, wasn't he? He testified, the judge made credibility findings about his testimony and the chronology leads through his participation, when he talked to the promoter, when he, when the, and then how the process proceeded all the way to that tax year. So, do you just ignore everything that came before? No, you don't, you don't have to ignore it all, but in the end, if we have to stick with our procedural rules as Congress enacted them, and Congress said if we're dealing with a partnership loss, that must be litigated in the year the loss incurred. The loss incurred in 12-31-01, we should have been able to dictate that litigation. The small partnership of this circuit should have been able to handle its own case, not be brought in. We tried to in our second notice of deficiency, it's the last point I'll make, our second notice of deficiency that was issued to us was based upon me saying, we want to opt out. Please IRS, let us have our own case about 12-31-01. Don't, don't do it this procedural way where we have all these cases involving all these other tax years and jam the results into us, because I knew the procedural nightmare that would occur, which is here, which is what I'll have to hit on rebuttal, which is our third issue. Because remember, the loss that was incurred is in 12-31-01. That's never been discussed. Instead, it, because there was no jurisdiction of the district court for that. So we now have to take all of their findings and jam them into a tax year that's never been litigated. Congress, under the TEFRA rules, said this could never happen for TEFRA partnerships, ever. They get to litigate their own partnership losses in their own partnership tax cases in their own partnership tax years. And I'm simply saying small partnerships should get the same. And so my partnership loss and my partnership basis in that loss are non-partnership items, because that's all small partnerships have, are non-partnership items. Thank you. Okay. Very well. Mr. Christensen, let's hear from you. Thank you. Jacob Christensen for the commissioner. May it please the court. Mr. Sarma still claims that he is entitled to a deduction for a $77 million loss, a fake loss that was the centerpiece of a transaction that this court has already held, lacked economic substance and must be disregarded for tax purposes. Mr. Sarma, as an indirect partner in the partnerships at issue in the prior TEFRA Kearney proceeding, was a party to those proceedings as the district court itself found in Kearney. And so was Lincoln partnership, the small partnership as a partner to a TEFRA partnership, Lincoln also was a party to those proceedings. And under sections 60 to 26 C, partners are treated as parties and allowed to participate in the proceedings, which is precisely what happened in the TEFRA proceedings. Mr. Sarma had every opportunity to participate and did so as, as well as the representatives of the partnerships, which were represented by the same council as Mr. Sarma is represented by today. The issue of whether the limitations period on assessment has expired boils down to the case of deficiency is attributable to a partnership item or affected item. In this case, as the court has noted, the term affected item is defined by the code section 62 to 31 to mean any item to the extent such item is affected by a partnership item. Here, the parties don't dispute that the issue as to whether Kearney partners was a sham was a partnership item during, and for the partnership tax year that ended on 12-19 of And that partnership tax year ended within the 12-31-01 tax year of Lincoln partnership. So the issue as to whether Kearney was a sham partnership was a partnership item that fell within a taxable year that fell within the Lincoln tax year that is here at issue when So the issue then is whether that partnership item of Kearney being a sham or not affects Lincoln's outside basis as a partner in Kearney. And the clear answer to that question is, as the Supreme Court has explained in Woods, when there is a sham partnership, a partner cannot have any basis other than zero in that Therefore, Lincoln's outside basis in Kearney during the relevant tax year in question here is affected by the determination as to whether Kearney is a sham, which is a partnership item. It falls squarely within the definition of affected item, but again, the term affected item means any item to the extent such item is affected by a partnership item. No dispute here that the decision whether Kearney is a sham is a partnership item. No dispute that that determination affects Lincoln's outside basis in Kearney by reducing it to zero. Again, back to the regulation that the court has referenced, same outcome. The basis of a partner's partnership interest is an affected item to the extent it is not a partnership item. Again, nobody is arguing that Lincoln's outside basis in Kearney in this case is a partnership item. Because Lincoln was not subject to TEFRA, it could not have any partnership items because it's a small partnership. Therefore, under the reg, the plain language, it's an affected item to the extent it's not a partnership item. And it's really that simple. That resolves the first several issues raised before this court. I'd next like to address briefly the argument by Mr. Sarma that if Kearney is treated as a sham, then Lincoln ought to be treated as having made a sale of Kearney's assets for a large loss of $78 million, the same loss that they're seeking and which was the centerpiece of this tax shelter. The tax court rejected that argument. The tax court held that under the TEFRA rules, the form of Kearney partnership should nevertheless be respected and that Lincoln should not be treated as having sold those assets. And that decision, the court cited section 6233A, which provides that if a partnership return is filed by an entity for a taxable year, but it is determined that the entity is not a partnership, then the provisions of TEFRA are extended in respect of such year to such entity and its items. So we think the tax court was correct in that regard. We've also raised an alternative argument that even if this were treated as a sale of the partner of Kearney, even if we assume that Lincoln sold the assets of Kearney, still there's no loss. The record is undisputed that at the time Kearney held CDs with a purported value of close to $81 million and also cash around $737,000 and the sale price, the court found below in the order on summary judgment, was $717,000. So Mr. Sarma would like to argue that because the basis in the CDs and the cash was so much higher than the sales price, that they're entitled to the loss. But what Mr. Sarma forgets and ignores is the fact that when there is a disposition of a sale and liabilities are discharged, that those liabilities must be accounted for in the amount realized. Here there were locked in fixed liabilities also on Kearney's balance sheet that exactly offset the amount of the CDs and there was also an additional $12,000 of liabilities of accrued payables. So when you do the math and you take Mr. Sarma's or Lincoln Partners' 99% interest in the Kearney assets and assuming there's a basis in those assets, and I'll get to that in a moment, then you add the basis of the CDs, the basis of the cash held by Kearney, and compare that to the sales price and you account for the $12,000 in accrued liabilities and the $81 million liability from the foreign currency trades, and multiply that by 99% to equal Mr. Lincoln's partnership share of that, they exactly match each other. So if there's a sale, the basis exactly matched the amount realized, there's no loss. But we would go even further and argue that even considering that the CDs that were held by Kearney during this time period have any basis at all, is entirely inconsistent with the Tefra proceedings, the prior Tefra proceedings in Kearney, which held that the tax shelter lacked economic substance, including the foreign currency trades, which resulted in the gain, or the purported gain, that after what happened is Kearney engaged in the foreign currency trades, the counterparty was the Credit Suisse Bank, Kearney settled the gain leg of the straddles and was required by the bank to deposit those proceeds into an interest-bearing account, which was the CD account. So the proceeds of the gain leg of the straddles were invested into the CD account. There was an offsetting locked-in loss that would be realized, not yet realized, but had been nevertheless locked in, the district court found, and the bank required the CD deposits as collateral against the loss leg of the straddles. So we would argue that all of that, the currency straddles, the CDs that were generated from the proceeds of the gain leg of the straddles, all of that the district court and this court affirmed already held was not entitled to tax respect. So the CDs held by Kearney during this period shouldn't even be deemed to have any basis at all. So for those two reasons, first, if you assume there is basis in the CDs, there's still no loss when you include the liabilities that were discharged as part of this hypothetical sale. Number two, the CDs shouldn't be deemed to have any basis at all consistent with the findings and conclusions of the district court in the prior TEFRA proceeding. We would ask that the court affirm the decision below. If there are no further questions, I will conclude. Okay. Very well. Thank you so much. Mr. Hodges, you've got four minutes remaining. Thank you, Your Honor. Based on what was just presented, I think that what Your Honor's heard was from Mr. Sarma and his small partnership, Lincoln Partners, no harm, no foul. You got to participate. You got to testify. No harm, no foul. We ask this court to please go by the guidance of MOASCO, which says it's not a court's place to alter the balance struck by Congress in procedural statutes by favoring one side in statutory construction. Strict adherence to procedural requirements by Congress is the best guarantee of even-handed administration of the law. The reason why that is so important here is at the end of the day, the IRS admits in their brief that partnership basis is not an affected item. They say it in a footnote, but they admit it for TEFRA partnerships. They provide no exclusion as to why should small partnerships be treated differently. The simple ruling is if a small partnership's basis in another partnership cannot be an affected item, like they say a TEFRA partnership cannot, then the notice of deficiency was untimely. These procedural rules are important. I know I'm short on time, but Judge Middlebrooks, I had a case before you in 1999, which involved how the IRS has to tell taxpayers under 7602 of the code, how they have to tell taxpayers, hey, we're going out and speaking to a bunch of other third parties about you. Before Judge Middlebrooks' decision, the IRS went out and asked a bunch of questions, took a lot of testimony, and the taxpayers didn't know about it. Judge Middlebrooks, you probably didn't realize this, but your decision actually changed the way that the IRS notifies third parties because it is what 7602 demanded. That's all we're asking here, is not paying attention to the no harm, no foul Mr. Sarma got to testify. Let's actually follow MOASCO and actually follow due process rights. Second, the thing that I want to hit on is the last argument that we raised, and this will show you the procedural nightmare that was caused by the way that the IRS conducted this case. Yes, the district court found that Kearney Partners, which is the partnership that Lincoln Partners owned, was a sham. A sham for tax purposes means it is ignored for income tax purposes, all of them. It's as if, and so what happens is, the sham entity just holds its assets as a nominee for its partner, Lincoln. And so therefore, what we were simply saying is, is because we didn't get to resolve the 1231-01 year, and we didn't get to have any evidence on this, and we're stuck with everything that came from here, from the prior periods, then at the end of the day, Lincoln is the deemed owner of Kearney's assets. And the government, in their motion for summary judgment, said exactly right. Because that follows every circuit, the third circuit, the tax court. Every circuit has said that if you disregard a partnership for tax purposes under sham, it doesn't exist at all. And therefore, Lincoln would be the deemed donor. The IRS admitted it. Some way, I think, going against party presentation principle, the tax court ignored that and said no, we understand that Kearney's partnership wrapper was taken off by the district court for everything about a sham. But as far as the transaction that happened in 1231-01, which was where Lincoln sold Kearney, we're going to put that wrapper back on. If this court affirms that holding, it will have a circuit split with the third circuit, the tax court. No decision has ever said that once you sham a partnership, that you can then put the wrapper back on the partnership for any other reason. Lastly, the court actually cites, the tax court cites Gregory v. Helfring, one of the top 15 tax procedure casers to ever come out of the Supreme Court. It is the case, landmark case, for substance over form. In Gregory v. Helfring, the Supreme Court basically said, we're going to disregard a corporation that we believe you set up solely for tax purposes, and we're going to assume you transferred its assets. We're going to disregard it. It never turned the corporation wrapper back on, but some way the tax court in this case said, we can turn that, we can apply the wrapper of the partnership anytime we want. No. On the third issue, lastly, which is my last point, is that you heard all of the discussion regarding the issues, the factual issues around foreign currency and all that. That shows you that a motion for summary judgment on our third and final issue is not appropriate in this case. It should be, if you get to the third issue, then it should be remanded whereby the tax court is told a sham partnership is to be ignored for all purposes, and you, tax court, must now determine what is the gain or loss that Lincoln suffered when it sold the CDs that were $82 million worth of CDs that were owned by Kearney that doesn't exist. Thank you. Very well. Thank you both. Fourth and finally, today that case is submitted. Sorry.